UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                    CASE NO:  8:12-CR-84-T-33MAP

JAMES CRAIG JENKINS, JR.
_____/

### ORDER

This cause comes on for consideration of Defendant's <u>pro se</u> Motion for New Trial (D-145), the United States' Response in Opposition (D-147), and Defendant's reply (D-149).

By way of background, on March 1, 2012, Defendant and co-defendant Christopher Carlton, were charged in an Indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine.  Co-defendant Carlton pled guilty.  Defendant proceeded to trial.

During his opening statement, counsel for Defendant conceded that Defendant was guilty of conspiracy to possess with intent to distribute cocaine, but argued that Defendant intended to purchase only two kilograms. (D-141, p. 12-14.) In its case-in-chief, the Government presented testimony as to how Defendant became under investigation.  Specifically, Officer James Emmerson testified that a cooperating source ("CS"), Lalo Garza, identified Defendant as someone he had

sold cocaine to over the past two and two and a half years. (Id. at p. 20, 28, 64, 128.) Garza was on parole and was arrested in October 2011 for crystal methamphetamine. (Id. at p. 69.)

Officer Emmerson explained that law enforcement recorded numerous calls between the CS and Defendant starting in November 2011. (Id. at p. 64, 129.) Officer Emmerson explained that in December 2011 Defendant met with "Flaco" of the Gulf Cartel, in Matamoros, Mexico, to discuss Defendant purchasing large quantities of cocaine from the Cartel. (Id. at p. 131-32.)

Officer Emmerson testified that on February 9, 2012, he acted as a go-between between the CS and Defendant. (Id. at 22.) The Government introduced audio recordings of eight telephone calls between Emmerson and Defendant negotiating the deal on that day. (GX 3A-9A.) The Government also presented video and audio recording of Defendant cutting into a brick of cocaine. (GX 11.)

Co-defendant Carlton testified that he acted as a paid driver for Defendant for approximately 18 months to two years. (D-141, p. 173-74.) He explained that he and Defendant "conducted business together, sold some drugs together." (Id.

2

at p. 173.) Prior to the offense in this case, their drug deals involved ounces to a kilogram amount. (Id. at 174.) He said on February 9, 2012, Defendant told him it was supposed to be "big quantities, [a] big transaction" so Carlton assumed it would be more than a kilogram. (Id. at p. 175.)

Carlton explained that Defendant was to pay him $1,500 for driving that day. (Id. at p. 175) Carlton testified Defendant met another man and got a bag from him and then put it in Carlton's truck. (Id. at 176) Carlton then drove Defendant to Westshore Mall. According to Carlton, Defendant took the bag and showed it to agent. Carlton saw there was money in the bag. (Id. at p. 177.) They then followed the agent to the hotel. Defendant and the agent went into the hotel while Carlton waited in his truck waiting for Jenkins. Carlton was arrested while waiting. (Id. at p 178-81.)

On July 18, 2012, a jury found Defendant guilty of conspiracy to possess five kilograms or more of cocaine. The Court sentenced Defendant to a term of imprisonment of 168 months. On appeal, Defendant challenged two evidentiary rulings and the sufficiency of the evidence. The Eleventh Circuit found that this Court did not violate Defendant's constitutional right to cross-examine Officer Emmerson and, further, did not abuse its discretion by admitting Emmerson's testimony that Defendant met with leaders

of the drug cartel. The Eleventh Circuit found that sufficient evidence supported Defendant's conviction. <u>United States v. Jenkins</u>, --- Fed. Appx. ---, 2014 WL 135445 (11th Cir. April 7, 2014) (per curiam).

On February 24, 2014, the Court received Defendant's <u>pro se</u> motion for new trial based on what he claims to be "newly discovered evidence." Defendant contends that, post-conviction, he learned that the CS, Abelardo Garza a/k/a Lalo Garza, was incarcerated during the alleged time of the drug dealing. Based on that contention, Defendant argues that Officer Emmerson falsely testified about the CS knowing Defendant for two years and that the Government knew or should have known of the false testimony. Defendant argues that he was unable to impeach Emmerson, and, had he been able to do so, he would not have been convicted.

The Government responds that Defendant's claim that the CS was incarcerated during the two year period he claimed to be doing drug transactions with Defendant is factually false. The Government, however, argues the Court need not reach the issue because the evidence is not newly discovered and is merely cumulative or impeaching. It further argues the evidence is not material and would not produce a new result.

Defendant replies that the Government argues the wrong standard of review. Defendant contends that there was a <u>Giglio</u> violation. Defendant argues that the CS was sentenced to a term of

nine years imprisonment in 2005 and thus could not have known Defendant for 2 to 2 ½ years prior to the offense in this case.[1]

The Court first addresses whether Defendant is entitled to a new trial under Rule 33 based on new evidence and then addresses Defendant's Giglio claim. See United States v. Brown, --- Fed. Appx. ---, 2013 WL 1760581, at 3-4 (11th Cir. April 24, 2014) (per curiam) (the court found that Brown was not entitled to a new trial under the Rule 33 requirements based on new evidence nor did he demonstrate a Giglio violation).

I.  **Newly Discovered Evidence**

In order to obtain a new trial based on newly discovered evidence, Defendant must show the following: 1) the evidence was discovered after the trial; (2) Defendant exercised due diligence in discovering the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) based on the evidence a new trial would probably produce a different result. United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997), cert. denied, 118 S.Ct. 1523 (1998). "The failure to satisfy any one of these elements is fatal to a motion for a new trial." United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995). Unsubstantiated accusations and allegations do not establish the foregoing elements. United States v. Elso, 364 Fed. Appx. 595, 597

---

[1] Defendant also claims that the PSI indicated that CS had known Defendant since 2006. (D-149, p.4.) The Court has reviewed the Presentence Investigation Report and finds that nothing in it indicates the length of time Defendant and the CS had known one another.

(11th Cir. 2010) (per curiam), cert. denied, 131 S.Ct. 1550 (2011). Motions for new trial based on newly discovered evidence are highly disfavored. United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006). A motion for new trial should be granted only with "great caution." Id.

Defendant fails to meet the elements required for a new trial. based on newly discovered evidence. First, while Defendant contends that he learned "post-conviction" that the CS was sentenced in 2005 to a period of incarceration of nine years, Defendant has not shown that he used due diligence in discovering the evidence. At least by the time of the trial in this case, defense counsel was aware of the CS's name. On the second day of trial, defense counsel admitted such and stated, "I imagine he's in Texas someplace, perhaps in prison or jail...." (D-141, p. 114.) Defendant presents no evidence that his counsel exercised due diligence in determining the CS's periods of incarceration prior to Defendant being found guilty.

Furthermore, the alleged evidence does not warrant a new trial as it is 1) merely impeaching or cumulative, 2) not material, and 3) not such that it would probably produce a different result at a new trial. Specifically, defense counsel elicited testimony from Officer Emmerson that the CS had a prior drug record and had been arrested for another drug offense while on parole. Further, contrary to Defendant's claim that he was not able to impeach

Emmerson, defense counsel impeached Emmerson through cross-examination. As explained by the Eleventh Circuit:

> Jenkins elicited from Emmerson that he had relied on a confidential informant, Lalo Garza, to target Jenkins; Garza had "an interest in making [Emmerson] happy" because Garza could have an existing sentence reduced and obtain future assistance; Garza recorded about 88 of his telephone conversations with Jenkins, but they also had some unrecorded conversations; Emmerson was uncertain what quantity of cocaine Jenkins intended to buy until they met in a hotel room; Jenkins acquired significantly less cocaine than he first offered to buy; and Jenkins said repeatedly that he could pay for only two kilograms of cocaine....

Jenkins, --- Fed. Appx. ---, 2014 WL 135445, at *1-2. Evidence related to Garza's specific periods of incarceration would have been further impeachment.

Finally, the evidence is not material, and it is not probable that a new trial would produce a different result. Defendant has not produced any evidence that Garza was actually incarcerated during the entire two to two and a half years prior to the offense in this case. Furthermore, as previously indicated, Defendant admitted his guilt in the conspiracy, and substantial evidence supported the jury's verdict. The jury heard the audio of Defendant's conversations with Officer Emmerson and saw the videotaped meeting during which Defendant cut into a kilogram of cocaine. (GX 11.) Law enforcement seized over $55,000 from the vehicle in which Defendant had been driven to the meeting, and there was evidence that Defendant confessed to Agent Justin Duralia that he agreed to take all seven kilograms. (D-142, at p. 44-46,

58, 103; GX 18A-F, 19.) For these reasons, Defendant is not entitled to the relief he seeks.

## II. Alleged False Testimony

Nor is Defendant entitled to a new trial based on the alleged false testimony of Emmerson. A defendant is entitled to a new trial where the government's case includes false testimony, the government knew or should have known of its falsity, and "there was any reasonable likelihood that the false testimony would have affected the judgment of the jury." United States v. Antone, 603 F.2d 566, 569 (5th Cir. 1979). In order to demonstrate that the government knowingly used false testimony, the defendant must show that: (1) the contested statements were actually false; (2) the statements were material; and (3) the prosecutor knew they were false. United States v. Bailey, 123 F.3d 1381, 1395 (11th Cir. 1997).

Here, Defendant has not presented sufficient evidence to demonstrate Emmerson testified falsely or that the Government intentionally failed to correct the testimony. Defendant simply relies on a printed page from an internet search of the Texas Department of Criminal Justice which indicates that Abelardo Garza was sentenced in Harris County on November 11, 2005, for possession of cocaine and bail jumping. The page, however, does not show Garza's release date. Defendant has presented no evidence that Garza was actually incarcerated in the two years prior to the

8

offense in this case. Thus, he is not entitled to a new trial based on his Giglio claim.

### III. Evidentiary Hearing

It is not necessary to hold an evidentiary hearing when the resolution of a motion for new trial is clear. United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003). The Undersigned was the trial judge in this case, and a district court's familiarity with a case can allow the court to rule on a motion for a new trial based on new evidence without holding an evidentiary hearing. See Schlei, 122 F.3d at 994. The Court finds no evidentiary hearing is warranted in this case.

It is therefore ORDERED that:

1) Defendant's Motion for New Trial (D-145) is DENIED.

DONE AND ORDERED in Tampa, Florida, this 2nd day of June, 2014.

_____
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE

9